Filed 4/4/22

# CERTIFIED FOR PUBLICATION

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| In re J.C., A Person Coming Under the Juvenile Court Law. | B312685 <br><br> (Los Angeles County Super. Ct. No. 18CCJP05161A) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> CAMERON C., et al. <br><br> Defendants and Appellants. | |

APPEAL from orders of the Superior Court of Los Angeles County, Stacy Wiese, Judge. Conditionally affirmed and remanded with directions.

William Hook, under appointment by the Court of Appeal, for Defendant and Appellant Cameron C.

Karen J. Dodd, under appointment by the Court of Appeal, for Defendant and Appellant Angelica S.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and Stephanie Jo Reagan, Principal Deputy County Counsel, for Plaintiff and Respondent.

## INTRODUCTION

Angelica S. and Cameron C. challenge the juvenile court's order under Welfare and Institutions Code section 366.26 terminating their parental rights to J.C.[1]  They argue that the Los Angeles County Department of Children and Family Services did not comply with the requirements of the Indian Child Welfare Act (25 U.S.C. § 1901 et seq.) (ICWA) and related California law and that the juvenile court erred in ruling ICWA did not apply.

We conclude that, because the juvenile court failed to ensure the Department fulfilled its duty of inquiry under section 224.2, subdivision (b), substantial evidence did not support the court's finding ICWA did not apply.  Therefore, we conditionally affirm the court's orders terminating Angelica's and Cameron's parental rights and direct the juvenile court to ensure the Department complies with section 224.2 and, if necessary, the notice provisions under ICWA and related California law.

---

[1]    Undesignated statutory references are to the Welfare and Institutions Code.

2

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *The Dependency Proceedings*

On August 14, 2018 the Department filed a petition under section 300, subdivisions (b) and (j), alleging Angelica's and Cameron's histories of substance abuse and current use of marijuana and other drugs placed their newborn son, J.C., at substantial risk of serious physical harm. J.C. tested positive for methadone and marijuana when he was born, and Angelica admitted that she used marijuana a few days before giving birth to J.C. and that she had used heroin and methadone in the past. The juvenile court detained J.C. and placed him with Cameron's mother, Cheryl B.

The Department's investigation revealed that Angelica and Cameron were "habitual drug users of heroin and methamphetamine" and had "extensive criminal histories related to drug abuse," including arrests in July 2018 (three weeks before Angelica gave birth to J.C.) for unlawful possession of a controlled substance under Health and Safety Code section 11350, subdivision (a). The Department recommended against providing reunification services for Angelica because, in dependency proceedings related to her other children, family reunifications services "were terminated" due to Angelica's "refusal to maintain sobriety." In addition, Angelica was arrested on three other occasions from 2015 to 2017 and tested positive for methamphetamine and opiates two times after the court detained J.C. And shortly before the jurisdiction hearing in this case, Cameron was arrested and sentenced to 90 days in county jail for possession of a controlled substance for sale.

The juvenile court sustained the petition as amended and declared J.C. a dependent child of the court. The court found that there was substantial danger and risk of detriment to J.C. if

3

he remained in the home of Angelica and Cameron, that the Department provided reasonable services to prevent removal, and that there were no available services to prevent further detention. The court removed J.C. from Angelica and Cameron and ordered family reunification services for Cameron, monitored visitation for Angelica and Cameron, and suitable placement for J.C.

For the six-month review hearing, the Department reported that J.C. was "fully bonded with his caregivers" and "doing well in their care" and that the caregivers were interested in adopting him. The juvenile court found that Cameron's progress toward alleviating or mitigating the causes necessitating J.C.'s placement had "not been substantial," but the court continued reunification services for him. The court subsequently granted Angelica's petition under section 388 for reunification services.

At the 12-month review hearing, the court found Angelica and Cameron had not made substantial progress toward alleviating or mitigating the causes that led to J.C.'s placement, terminated reunification services, and set the case for a selection and implementation hearing under section 366.26. At the hearing to select a permanent plan for J.C, the court found that it would be detrimental to return J.C. to his parents, that Angelica and Cameron had not maintained regular and consistent visitation and had not established a bond with J.C., that J.C. was adoptable, and that any benefit to J.C. from his relationship with his parents was outweighed by the physical and emotional benefit he would receive through the permanency and stability of adoption. The court terminated Angelica's and Cameron's parental rights and designated Cheryl and her husband as the prospective adoptive parents. Angelica and Cameron timely appealed from the orders terminating their parental rights.

4

B.      *Inquiry Under ICWA and Related California Law*

Angelica and Cameron each completed Judicial Council form ICWA-020, Parental Notification of Indian Status. Angelica and Cameron both checked the box next to the statement, "I have no Indian ancestry as far as I know." In her initial interview with the social worker, Angelica denied any Indian ancestry. At the detention hearing the court confirmed Angelica and Cameron had indicated they had no known Indian ancestry. The court found: "There is no reason to know the Indian Child Welfare Act applies to the case." The record does not show the Department or the court made any further inquiry about J.C.'s possible Indian ancestry.

For the Department's investigation into the allegations in the petition, the social worker interviewed Cheryl (Cameron's mother and J.C.'s paternal grandmother) several times but did not ask her about J.C.'s possible Indian ancestry. The social worker also interviewed Cheryl's mother (Cameron's maternal grandmother and J.C.'s paternal great-grandmother) and Angelica's stepfather, but did not ask either of them about J.C.'s possible Indian ancestry.

**DISCUSSION**

Angelica and Cameron contend that the Department did not conduct an adequate inquiry into the family's possible Indian ancestry and that the juvenile court failed to ensure the Department fulfilled its duty under ICWA and related California law. We agree with both contentions.

A.      *Applicable Law*

"Congress enacted ICWA in 1978 in response to 'rising concern in the mid-1970's over the consequences to Indian

5

children, Indian families, and Indian tribes of abusive child welfare practices that resulted in the separation of large numbers of Indian children from their families and tribes through adoption or foster care placement, usually in non-Indian homes.'" (*In re Isaiah W.* (2016) 1 Cal.5th 1, 7; see *In re T.G.* (2020) 58 Cal.App.5th 275, 287; *In re E.H.* (2018) 26 Cal.App.5th 1058, 1067.)  ICWA provides:  "'In any involuntary proceeding in a State court, where the court knows or has reason to know that an Indian child is involved, the party seeking the foster care placement of, or termination of parental rights to, an Indian child shall notify the parent or Indian custodian and the Indian child's tribe, by registered mail with return receipt requested, of the pending proceedings and of their right of intervention.' [Citation.]  This notice requirement, which is also codified in California law [citation], enables a tribe to determine whether the child is an Indian child and, if so, whether to intervene in or exercise jurisdiction over the proceeding." (*In re Isaiah W.*, at p. 5; see 25 U.S.C. § 1912(a); § 224.3, subd. (a); *In re H.V.* (2022) 75 Cal.App.5th 433, 436; *In re T.G.*, at pp. 287-288.)[2]  "ICWA reflects a congressional determination to protect Indian children and to promote the stability and security of Indian tribes and families by establishing minimum federal standards a state court must follow before removing an Indian child from his or her family." (*In re T.G.*, at p. 287; see 25 U.S.C. § 1902; *In re Benjamin M.* (2021) 70 Cal.App.5th 735, 740 ["'Congress enacted

---

[2]      "'Indian child' means any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4); see § 224.1, subds. (a), (b); *In re H.V.*, *supra*, 75 Cal.App.5th at p. 437)

ICWA to further the federal policy "'that, where possible, an Indian child should remain in the Indian community.'"'"].)

"""ICWA itself does not impose a duty on courts or child welfare agencies to inquire as to whether a child in a dependency proceeding is an Indian child. [Citation.] Federal regulations implementing ICWA, however, require that state courts 'ask each participant in an emergency or voluntary or involuntary child-custody proceeding whether the participant knows or has reason to know that the child is an Indian child.' [Citation.] The court must also 'instruct the parties to inform the court if they subsequently receive information that provides reason to know the child is an Indian child.'"""" (*In re Y.W.* (2021) 70 Cal.App.5th 542, 551; see 25 C.F.R. § 23.107(a) (2021).) "State law, however, more broadly imposes on social services agencies and juvenile courts (but not parents) an 'affirmative and continuing duty to inquire' whether a child in the dependency proceeding 'is or may be an Indian child.'" (*In re Benjamin M.*, *supra*, 70 Cal.App.5th at pp. 741-742; see § 224.2, subd. (a); *In re Y.W.*, at p. 551.)

Section 224.2 """creates three distinct duties regarding ICWA in dependency proceedings.""" (*In re H.V.*, *supra*, 75 Cal.App.5th at p. 437; see *In re D.F.* (2020) 55 Cal.App.5th 558, 566.) First, section 224.2, subdivision (b), requires the child protective agency to ask "the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled." (See *In re H.V.*, at p. 437; *In re T.G.*, *supra*, 58 Cal.App.5th at p. 290; Cal. Rules of Court, rule 5.481(a)(1).) Although commonly referred to as the "initial duty of inquiry," it "begins with the initial contact" (§ 224.2, subd. (a)) and continues throughout the dependency proceedings. (See *In re T.G.*, p. 290 [the duty to

7

inquire "begins with initial contact [citation] and obligates the juvenile court and child protective agencies to ask all relevant involved individuals whether the child may be an Indian child"].)

Second, if the court or child protective agency "has reason to believe that an Indian child is involved in a proceeding, but does not have sufficient information to determine that there is reason to know that the child is an Indian child," the court and the Department "shall make further inquiry regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable."[3] (§ 224.2, subd. (e); see *In re H.V.*, at p. 437; *In re T.G.*, *supra*, 58 Cal.App.5th at p. 290; Cal. Rules of Court, rule 5.481(a)(4).) Third, if the further inquiry "'results in a reason to *know* the child is an Indian child, then the formal notice requirements of section 224.3 apply.'" (*In re H.V.*, at p. 437; see 25 U.S.C. § 1912(a); § 224.3, subd. (a) [notice under ICWA "shall be provided" if the court, social worker, or probation officer "has reason to know . . . that an Indian child is involved"].)

"'"The juvenile court must determine whether proper notice was given under ICWA and whether ICWA applies to the proceedings."' [Citation.] 'If the court makes a finding that proper and adequate further inquiry and due diligence as required in [section 224.2] have been conducted and there is no reason to know whether the child is an Indian child, the court may make a finding that [ICWA] does not apply to the proceedings, subject to reversal based on sufficiency of the evidence.'" (*In re Y.W.*, *supra*, 70 Cal.App.5th at p. 552; see

---

[3] "'Reason to believe' is broadly defined as 'information *suggesting* that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe.'" (*In re Benjamin M.*, *supra*, 70 Cal.App.5th at p. 744; see § 224.2, subd. (e)(1); *In re T.G.*, *supra*, 58 Cal.App.5th at p. 290, fn. 14.)

8

§ 224.2, subd. (i)(2); *In re Josiah T.* (2021) 71 Cal.App.5th 388, 408 ["the court may not find that ICWA does not apply when the absence of evidence that a child is an Indian child results from a [child protective agency] inquiry that is not proper, adequate, or demonstrative of due diligence"]; *In re D.S.* (2020) 46 Cal.App.5th 1041, 1050; Cal. Rules of Court, rule 5.481(b)(3).)

B. *The Department Failed To Conduct an Adequate Inquiry into J.C.'s Possible Indian Ancestry*

The Department did not fulfill its duty to conduct an adequate inquiry into whether J.C. may be an Indian child because it did not ask any extended family members—some of whom were readily available—whether J.C. had any possible Indian ancestry. (See 25 U.S.C. § 1903(2) ["'extended family member'" includes the child's "grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent"]; § 224.1, subd. (c) ["'extended family member'" is "defined as provided in Section 1903 of the federal Indian Child Welfare Act"].) At the top of the list of persons the Department did *not* ask about possible Indian ancestry was J.C.'s paternal grandmother, Cheryl, who cared for J.C. throughout the dependency proceedings, maintained regular contact with the social worker, and may have been able not only to furnish ICWA-related information about her family, but also to help the Department find Cameron's biological father. (See *In re Y.W.*, *supra*, 70 Cal.App.5th at p. 553, fn. 10 [grandparent is an extended family member under ICWA]; *In re Michael A.* (2012) 209 Cal.App.4th 661, 665 [same].) The social worker also made no effort to interview Angelica's biological parents. The social worker spoke to Angelica's stepfather, Mark M. (who was

9

married to Angelica's mother, Kathryn M.), about Angelica's substance abuse; it would have taken very little additional effort to ask Mark or Kathryn about possible Indian ancestry on Kathryn's side of the family or how to contact Angelica's biological father to get information from him.

The Department's failure to ask Angelica's and Cameron's extended relatives about their possible Indian ancestry violated the express mandate of section 224.2, subdivision (b).  (See *In re Antonio R.* (Mar. 16, 2022, B314389) ___ Cal.App.5th ___, ___ [2022 WL 794843, p. 5] [section 224.2, subdivision (b), required the child protective agency to interview extended family members]; *In re H.V.*, *supra*, 75 Cal.App.5th at p. 438 [child protective agency's "first-step inquiry duty under ICWA and state law was broader [than interviewing only the mother], requiring it also to interview, among others, extended family members and others who had an interest in the child"]; *In re Benjamin M.*, *supra*, 70 Cal.App.5th at p. 742 [failure to ask the father's known relatives about possible Indian ancestry violated ICWA requirements under state law]; *In re Y.W.*, *supra*, 70 Cal.App.5th at pp. 552-553 [child protective agency's failure to follow up on a lead to locate and interview the mother's biological parents violated section 224.2, subdivision (b)]; see also *In re S.R.* (2021) 64 Cal.App.5th 303, 314 [section 224.2 "obligates the court and child protective agencies to ask all relevant involved individuals . . . 'whether the child is, or may be, an Indian child'"].)

The juvenile court, too, did not satisfy its duty to ensure the Department adequately investigated whether J.C. may be an Indian child.  There is no indication in the record that, after the detention hearing, the juvenile court gave ICWA another thought in the almost three years of this dependency case.  The court did

10

not ask the Department whether the social worker made the relevant inquiry when she spoke to Cheryl, Cheryl's parents, or Angelica's stepfather. Nor did the court ask the Department to describe the efforts it made to ascertain J.C.'s possible Indian ancestry; the record reflects that, other than obtaining the signed ICWA-020 forms (and perhaps asking Angelica in her initial interview if she had any Indian ancestry), the Department made no such efforts at all. That was error. (See *In re Y.W.*, *supra*, 70 Cal.App.5th at p. 555 [juvenile court had a duty to ensure the Department complied with section 224.2, subdivision (b)]; *In re N.G.* (2018) 27 Cal.App.5th 474, 482 [juvenile court had a duty to ensure the child protective agency made the relevant inquiries, including asking the maternal uncle whether the child "may have maternal Indian ancestry"]; see also *In re K.R.* (2018) 20 Cal.App.5th 701, 709 ["the court has a responsibility to ascertain the agency has conducted an adequate investigation and cannot simply sign off on the notices as legally adequate without doing so"].)

The Department neither concedes nor denies it failed to conduct an adequate inquiry under section 224.2, subdivision (b). The Department instead argues "any inquiry error was harmless" because Angelica and Cameron denied they had any Indian ancestry, there was nothing "in the record to suggest these denials were unreliable," and the evidence the Department "'uncovered'" in its inadequate inquiry was sufficient for the juvenile court to make a finding ICWA did not apply. To state the Department's argument is to expose its circular flaw: By failing to conduct an adequate inquiry, the Department virtually guarantees that the (incomplete) information it obtains will support a finding ICWA does not apply and that the juvenile

11

court's error in failing to require the Department to comply with the law is harmless. Under the Department's theory, the less it complies with its duties to inquire under state and federal law, the more harmless is its erroneous failure to inquire.

That's not how it works. As we explained in *In re Y.W.*, *supra*, 70 Cal.App.5th 542, where, as here, the Department's failure to conduct an adequate inquiry makes it impossible for the parent to show prejudice, we must remand for a proper inquiry.[4] (*Id.* at p. 556; see *In re Antonio R.*, *supra*, ___ Cal.App.5th at p. ___ [2022 WL 794843, p. 7] [where the child protective agency fails to discharge its duty of inquiry under ICWA and related state law, "the error is in most circumstances . . . prejudicial and reversible"]; *In re H.V.*, *supra*, 75 Cal.App.5th at p. 438 & fn. 4 [juvenile court's "ICWA error was prejudicial and reversible" where the child protective agency's "failure to discharge its inquiry duty under ICWA and state law [was] responsible for the absence of information in the record about the child's possible Indian ancestry"]; *In re N.G.*, *supra*, 27 Cal.App.5th at p. 484 ["In the absence of an appellate record affirmatively showing the court's and the agency's efforts to

---

[4]   The Department attempts to distinguish *In re Y.W.*, *supra*, 70 Cal.App.5th 542 by pointing out that the mother in that case was adopted and had minimal contact with her biological parents, whereas in this case neither parent "reported being adopted or being unfamiliar with their biological relatives." That the mother in *In re Y.W.* was adopted was all the more reason the Department should have followed up on an obvious lead to locate her biological parents. In no way did we suggest in *In re Y.W.* that a parent's statements on the ICWA-020 form are more reliable if the parent is not adopted.

12

comply with ICWA's inquiry and notice requirements, we will not, as a general rule, conclude that substantial evidence supports the court's finding that . . . ICWA did not apply. Instead, as a general rule, we will find the appellant's claims of ICWA error prejudicial and reversible."].)  Without the benefit of a proper inquiry, Angelica and Cameron can neither assert they have Indian ancestry nor show their initial responses on the ICWA-020 form were inaccurate or unreliable.  (See, e.g., *In re S.R.*, *supra*, 64 Cal.App.5th at p. 314 ["the children's parents apparently had no idea of their family's connection to the . . . tribe . . . even though the children's great-grandmother was a member"].)  Indeed, the extensive inquiry requirements under section 224.2 presume that a parent's declaration on the ICWA-020 form, reliable or not, is not enough and that the child protective agency must do more than look at the form.  (See *In re T.G.*, *supra*, 58 Cal.App.5th at p. 295 ["the information available at the outset of dependency proceedings will often be inadequate to ensure the necessary protection of the rights and cultural heritage of Indian children, Indian families and Indian tribes"].)

Citing *In re Benjamin M.*, *supra*, 70 Cal.App.5th 735, the Department argues that any information from Angelica's or Cameron's relatives was not "'likely to bear meaningfully upon whether [J.C.] is an Indian child' because 'the evidence already uncovered in the initial inquiry was sufficient for a reliable determination.'"  As discussed, this reasoning allows the harmless error exception to swallow the rules governing the duty to inquire.  In addition, the Department's argument misapplies *In re Benjamin M.*  In that case the court stated:  "We believe that in ICWA cases, a court must reverse where the record

demonstrates that the agency has not only failed in its duty of initial inquiry, but where the record indicates that there was readily obtainable information that was likely to bear meaningfully upon whether the child is an Indian child." (*In re Benjamin M.*, at p. 744.) The court in *Benjamin M.* rejected an approach that would require reversal in all cases where the agency erred, explaining: "There are cases where . . . it was obvious that additional information would not have been meaningful to the inquiry. This might occur where the evidence already uncovered in the initial inquiry was sufficient for a reliable determination." (*Id.* at p. 743.) This is not one of those cases. As discussed, it is not uncommon for parents to mistakenly disclaim (or claim) Indian ancestry. (See *In re S.R.*, *supra*, 64 Cal.App.5th at p. 314; *In re T.G.*, *supra*, 58 Cal.App.5th at p. 295.) And putting aside that only the tribe can determine whether a child is an Indian child (see § 224.2, subd. (h); *In re Breanna S.* (2017) 8 Cal.App.5th 636, 654, disapproved on another ground in *In re Caden C.* (2021) 11 Cal.5th 614, 629, 637, fn. 6), the statements on Angelica's and Cameron's ICWA-020 forms did not relieve the Department of its duty to interview the parents' extended relatives.

Moreover, in its reliance on *In re Benjamin M.*, the Department fundamentally misunderstands the prejudice standard the court adopted in that case. The court in *In re Benjamin M.* actually stated that the failure to comply with section 224.2 is not harmless where the readily obtainable information was likely to bear meaningfully upon the *inquiry* whether a child is an Indian child, regardless of whether the information was likely to show that the child *is* an Indian child. (*In re Benjamin M.*, *supra*, 70 Cal.App.5th at p. 744.) As the

14

court in *In re Benjamin M.* explained, in a passage the Department ignores, "it would frustrate the statutory scheme if the harmlessness inquiry required proof of an actual outcome (that the parent may actually have Indian heritage), rather than meaningful proof relevant to the determination, whatever the outcome will be." (*Id.* at pp. 743-744.) Focusing on the inquiry (rather than the result), the court in *In re Benjamin M.* found the child protective agency's failure to interview the father's relatives, essentially the same error the Department committed here, was *not* harmless. (See *id.* at p. 744 ["the information those relatives could have given would likely have shed meaningful light on whether there is reason to believe [the minor] is an Indian child"].) Thus, even under the harmless error standard the court applied in *In re Benjamin M.*, the Department's failures were not harmless because, at a minimum, interviewing Cheryl and Kathryn (both of whom the social worker easily could have contacted) would have shed meaningful light on the inquiry into J.C.'s possible Indian ancestry.

The two additional cases cited by the Department, *In re Darian R.* (2022) 75 Cal.App.5th 502 and *In re S.S.* (2022) 75 Cal.App.5th 575, are distinguishable. In *In re Darian R.* the court held the child protective agency's failure to ask a maternal aunt and a grandfather about the children's Indian ancestry was harmless because the juvenile court in a prior dependency case involving two of the three dependent children (and the same parents) found ICWA did not apply. (*In re Darian R.*, at pp. 506, 509.) While *In re Darian R.* is arguably limited to the relatively unusual circumstance of a prior finding in a previous dependency proceeding involving the same family, the court's harmless error analysis in that case is questionable. The finding in the prior

15

dependency case that ICWA did not apply was in 2015. (*Id.* at pp. 509-510.) In the later dependency case, filed July 2019, the juvenile court made findings in September 2019, November 2019, and October 2020 that ICWA did not apply. (*Id.* at p. 510) Between the findings in the prior case and those in the later case, however, the law governing the duty to inquire under ICWA changed: The Legislature amended sections 224.2 and 224.3, effective January 1, 2019, to require inquiry of extended family members; amended section 224.2, subdivision (d), effective January 1, 2019, to conform the state law definition of "reason to know" with federal regulations; and amended section 224.2, subdivision (e), effective September 18, 2020, to add a definition of "reason to believe." (See *In re T.G.*, *supra*, 58 Cal.App.5th at p. 296; *In re A.M.* (2020) 47 Cal.App.5th 303, 316.) In addition, the Judicial Council amended California Rules of Court, rule 5.481(a)(4), which "mandates further inquiry if a social worker or investigator 'knows or has reason to know or believe that an Indian child is or may be involved,'" effective January 1, 2020, "to add 'or believe' to the triggering requirement that an Indian child 'is or may be involved.'" (*In re T.G.*, at p. 291.) The court in *In re Darian R.* did not consider whether applying these new laws, which expanded the duty of inquiry, would necessarily produce the same result.[5]

---

[5] The court *In re Darian R.* also relied on the fact the mother had been "under court order to continue providing information relevant to ICWA." (*In re Darian R.*, *supra*, 75 Cal.App.5th at p. 510.) But the Department, not the parent, has the burden to provide information relevant to ICWA, and even a parent under a court order cannot provide information about possible Indian ancestry the parent does not know.

In *In re S.S.*, *supra*, 75 Cal.App.5th 575 the court held the child protective agency's failure to ask a grandparent who wanted to adopt the child about possible Indian ancestry was harmless because ICWA gives preference to placing an Indian child with a member of the Indian child's extended family. (*Id.* at p. 582; see 25 U.S.C. § 1915.) The court in *In re S.S.* also relied on the assumptions that the grandmother, as a prospective adoptive parent, would have had "a strong incentive to bring to the court's attention any facts that suggest that [the minor] is an Indian child" and that her failure to do so implied she was "unaware of such facts." (*In re S.S.*, at p. 582) This analysis erroneously places the burden on a parent or the parent's family to provide information about possible Indian ancestry, when under ICWA and California law that burden is on the child protective agency. (See *In re Michael V.* (2016) 3 Cal.App.5th 225, 233 ["the burden of coming forward with information to determine whether an Indian child may be involved and ICWA notice required in a dependency proceeding does not rest entirely—or even primarily—on the child and his or her family"].) It also subverts a central purpose of ICWA and related California law: to protect the interests of the Indian tribes. (See *In re Benjamin M.*, *supra*, 70 Cal.App.5th at p. 745 ["it is in part the tribe's right to a determination of a child's Indian ancestry, but the tribe is not present, and the agency is charged with obtaining information to make that right meaningful"]; *In re S.R.*, *supra*, 64 Cal.App.5th at p. 314 [same]; see also *In re Isaiah W.*, *supra*, 1 Cal.5th at p. 13 ["Indian tribes have interests protected by ICWA that are separate and distinct from the interests of parents of Indian children," and "ICWA's notice requirements are 'intended to protect the interests of Indian children and tribes despite the

17

parents' inaction'"].)  Finally, not only was the court's decision in *In re S.S.* based on speculation about the maternal grandmother's incentives, it was based on a false premise:  As the prospective adoptive parent, the grandmother's incentive would be *not* to provide any information suggesting the child was an Indian child, so that she could adopt the child without any potential interference from the tribe.

## DISPOSITION

The juvenile court's orders terminating the parental rights of Angelica and Cameron are conditionally affirmed.  The matter is remanded to the juvenile court with directions to ensure the Department fully complies with the inquiry and, if necessary, notice provisions of ICWA and related California law, including interviewing Cheryl, Kathryn, and any other extended family members they may identify.


SEGAL, J.


We concur:



PERLUSS, P. J.                    FEUER, J.


18